**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CRIMINAL NO. 3:16CR124(SRU) |
| JAMES C. DUCKETT, JR. | ) | |
| | ) | AUGUST 21, 2017 |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO F. R. CRIM. Pro. 29**

In support of the Defendant's Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29, the defendant asserts the following.

## I. Background

The Government had charged the Defendant, James C. Duckett, Jr., with violations of the conspiracy and wire fraud statutes, 13 U.S.C. §§ 1349, 1341, 1343,[1] based on allegations that Mr. Duckett was part of a scheme to defraud the City of Hartford and/or subcontractors of Premier Sports Management Group, LLC ("PSMG") in relation to a professional services contract between PSMG and the City of Hartford for the redevelopment of Dillon Stadium in Hartford. Additionally, Mr. Duckett is also charged with Illegal Monetary Transactions, 18 U.S.C. § 1957,[2] based on the movement of moneys alleged to have constituted criminally derived property (or proceeds) of the underlying charged fraud.

[1] The Defendant, James C. Duckett, Jr., was charged with Conspiracy to Commit Mail and/or Wire Fraud, in violation of 18 U.S.C. § 1349 (Count One) and substantive Wire Fraud, in violation of 18 U.S.C. §§ 2 and 1343 (Counts Eight through Ten).
[2] The Defendant, James C. Duckett, Jr., was charged with Illegal Monetary Transactions, in violation of 18 U.S.C. § 1957 (Counts Eleven, Thirteen, Fourteen, Sixteen through Eighteen, and Twenty-one through Twenty-four.

This matter was brought to trial before a jury commencing on June 26, 2017. The case was submitted to the jury on July 6, 2017. The jury returned a verdict that same day finding the Defendant, James C. Duckett, Jr., guilty of counts One, Eight through Ten, Eleven, Thirteen, Fourteen, Sixteen through Eighteen, Twenty-two and Twenty-three. The Defendant was acquitted of count Twenty-one and the Government dismissed count Twenty-Four before submission of the case to the Jury.

## II. Legal Standard

Under Rule 29 of the Federal Rules of Criminal Procedure, a trial court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering and granting a Rule 29 motion, where a fact to be proved is also an element of the offense ". . . it is not enough that the inferences in the government's favor are permissible." "We must be satisfied that after drawing all permissible inferences in favor of the government, a rational trier of fact could find that every element of the crime was established beyond a reasonable doubt." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995), *citing United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994).

Therefore, this Court must be satisfied that any such inferences are sufficiently supported with proven facts to find that each essential element is established beyond a reasonable doubt. "[A] conviction based on speculation and surmise alone cannot stand." *D'Amato*, 39 F.3d 1256. The Court must reject "those evidentiary interpretations . . . that are unreasonable, insupportable, or overly speculative . . . ." *United States v. Ofray-Campos*, 534 F.3d 1, 31-32 (1st Cir. 2008), *quoting United States v. Hernandez*, 218 F.3d 58, 64 (1st Cir. 2000). Courts have recognized that "if the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then a reasonable [fact

finder] must necessarily entertain a reasonable doubt." *See United States v. Coplan*, 703 F.3d 46, 71 (2d Cir. 2011), *citing United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2000). Therefore, if the government does not introduce evidence at trial to prove the defendant guilty beyond a reasonable doubt, then the defendant is not guilty.

In granting a motion for a judgment of acquittal, the Second Circuit has made it clear that a trial court must grant the motion when there is no evidence presented by the government, which proves the defendant's guilt beyond a reasonable doubt:

> "The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal…if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted.

*United States v. Temple*, 447 F.3d 130 (2d Cir. 2005), *citing United States v. Taylor,* 424 F.3d 240, 243 (2d Cir. 1972) (emphasis added).

## III. Argument

Mr. Duckett was first charged in count one with Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349. That statute provides "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Thus, to convict Mr. Duckett of a criminal conspiracy the Government must prove (1) the existence of the unlawful agreement charged, (2) the defendant's knowing, wilful and voluntary membership in the conspiracy, and (3) the object of the conspiracy. *See United States v. Whab*, 355 F.3d 155, 162 (2d Cir. 2004).

The objects of the conspiracy for which Mr. Duckett was charged were mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. Of course, mail and wire fraud require proof, in brief, of the defendant's (1) knowing participation in a scheme to

defraud, (2) to obtain money or property, (3) using the mails or wires. *See Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004). Moreover, as part of the first element of mail and wire fraud, the Government must prove a fraudulent intent, or that some actual harm or injury was contemplated by the schemer. *See United States v. DiNome*, 86 F.3d 277, 283 (2d Cir. 1996).

In addition to the object of the criminal conspiracy, Mr. Duckett was also charged with substantive wire fraud in counts Eight, Nine and Ten. Moreover, Mr. Duckett was also charged with committing wire fraud in counts Eight, Nine and Ten under alternative criminal liability theories of aiding and abetting[3] (in violation of 18 U.S.C. § 2(a)), wilfully causing a crime[4] (in violation of 18 U.S.C. § 2(b)), and by a finding of guilt of the substantive conspiracy charged in count One.

The remaining counts in which Mr. Duckett was charged and convicted, Eleven, Thirteen, Fourteen, Sixteen through Eighteen, Twenty-two and Twenty-three, were all alleging illegal monetary transactions, in violation of 18 U.S.C. § 1957. Essentially these counts required proof that the defendant knowingly engaged in monetary transactions in or affecting interstate commerce, which occurred in the U.S. or were performed by a U.S. person, and which involved criminally derived property (i.e. the defendant knew of the nature of the property as the proceeds of the specified unlawful activity of mail and wire fraud) of a value of greater than $10,000.

---

[3] Aiding and abetting requires the Government to show, beyond a reasonable doubt, that another person committed the offense for which the Defendant is charged and that the defendant aided or abetted, or willfully associated himself with the commission of the crime and participated by doing some act to make the crime more likely to succeed. *See, e.g., Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949).

[4] Willfully causing a crime requires the Government to show, beyond a reasonable doubt, that with the mental state necessary to violate the underlying wire fraud statute, the defendant willfully caused an act to be done, that if performed by him or another would be an offense against the United States. *See, e.g., United State v. Gabriel*, 125 F.3d 89 (2d Cir. 1997).

Taking the evidence on the record in a light most favorable to the Government, it is still difficult to see how credibility decisions alone by the jurors can support the verdict in this case, without the jury having resorted to speculation and/or conjecture.

Ultimately the Government's case is, in many ways, wholly dependent on the testimony of its cooperating witness and indicted co-defendant, Mitchell Anderson. Only Mr. Anderson was able to testify regarding his purported private conversations with the Defendant regarding the nature and objectives of the alleged conspiracy. Only Mr. Anderson testified about what Mr. Duckett's understandings, beliefs and wishes before the jury. Only Mr. Anderson was alleged to have been on "the inside" of the conspiracy to defraud the City of Hartford with Mr. Duckett. The Government's case was balanced precariously on the jury accepting and crediting the testimony of Mr. Anderson.

However, the narrative that Mr. Anderson portrayed on cross-examination was a far cry from the assertions he made about the defendant, and his own conduct, on direct examination. In order to convict Mr. Duckett, the jury would have had to credit some portions of the testimony of **Mr. Anderson, even after he acknowledged lying to the government repeatedly**, (Cross of M. Anderson, June 28, 2017 (hereinafter "Anderson") at 125), **lying to City of Hartford officials**, Anderson at 127, **lying to the vendors, who were his friends and who trusted him**, Anderson at127, **and even committing perjury by lying to the jury on direct examination**, Anderson 115.

Moreover, the jury would also have to ***discredit*** Mr. Anderson when he testified:

- That he did not feel he had engaged in criminal conduct in relation to any of the counts of the indictment for which he was charged, *including those to which he pled guilty*;

- That he did not feel he was engaging in wrongful activity;

- That he did not feel that he was submitting false invoices to the City of Hartford;
- That he believed the invoices he submitted to the city were legitimate;
- That he would not have submitted any bills to the City if he believed them to be false;
- That Mr. Rick Laxton from Big Span was working with the architect (D. Quisenberry) on the Dillon Stadium project;
- That there was nothing in the invoices submitted to the City that Mr. Anderson believed was false;
- That if the City had not shut down the Dillon Stadium project he would have continued to try to meet the terms and conditions of the contract;
- That he never intended to permanently deprive the vendors of money;
- That he is not a thief;
- That he is not a dishonest person;
- That he was reliant on the money from Moolex coming in to support the project;
- That he and Mr. Duckett were not trying to figure out how to submit false invoices to submit to the City;
- That he and Mr. Duckett were not trying to figure out how to steal money from the City;
- That Mr. Duckett also believed that the money from Moolex was coming to finance the Dillon Stadium project;
- That the money provided to Moolex was believed to be in accordance with the contract with the City of Hartford;
- That the money sent to Moolex was believed to be a good and prudent investment by PSMG;
- That the money sent to Moolex was in furtherance of the business goals of PSMG;
- That he never believed the money he received from the City was given under false pretenses;

*See* Anderson at 139-159, 164-172, 176-179, 182-187 and 194-202.

Generally, the court may engage in its own weighing of the evidence and its own assessment of witnesses' credibility but should only disturb the jury's verdict when it was egregious and, should only rarely substitute its own judgment of a witness's credibility for the jury's. *See Raedle v. Credit Agricole Indosuez,* 670 F.3d 411, 418 (2d Cir. 2012) *cert. denied,* 133 S. Ct. 789, 184 L. Ed. 2d 582 (U.S. 2012). That being fully acknowledged, Mr. Duckett's case is one of those extreme circumstances where the weight of the evidence overwhelmingly requires that Mr. Anderson's testimony be discredited entirely, as it is rife with the most egregious lies and inherent inconsistencies on issues that are at the heart of Mr. Duckett's case.

While Mr. Anderson is self-deprecating when asked by the government about his wrongdoings and the criminal conduct committed in concert with Mr. Duckett, Mr. Anderson plays the fool and the martyr on cross-examination. For the jury to have credited Mr. Anderson's testimony to the extent necessary to have supported the conspiracy and substantive wire fraud counts would have required the jury to have completely and absolutely disregarded as much as half of the total volume of his testimony. As such, **the court should be particularly suspect of a jury's credibility considerations when the jury is left to weigh the testimony of Dr. Jekyll against that of Mr. Hyde.**

Without Mr. Anderson's incredible testimony, the Government has patently failed to carry its burden on each count against Mr. Duckett. Notwithstanding the testimony of Mr. Anderson, there is support on the trial record for the following facts:

- The only contractor ("business partner") of the City of Hartford was PSMG, of which Mitchell Anderson and Thomas Novajasky were the officers; (S. Cole; M. Anderson; T. Novajasky);

- No contract was ever entered into by the City of Hartford and James C. Duckett, Jr. and/or Black Diamond, nor did Duckett or his company have any obligations to the City; (S. Cole)

- The City did not require PSMG to pay subcontractors within any definite amount of time when the City paid PSMG on the invoices; (S. Cole);

- The City was paying the invoices without verifying what the invoices were for or if the work was actually performed; (S. Cole; E. Sinani);

- Only Mitchell Anderson and Thomas Novajasky were authorized signatories on the PSMG banking accounts, never James Duckett; (M. Anderson; T. Novajasky);

- That the City of Hartford was trusting and relying on PSMG and Mitchell Anderson to meet the terms of the contract with the City; (S. Cole);

- Mitchell Anderson was the point of contact with the City throughout the Dillon Stadium project (S. Cole);

- The City was not, at any point, contemplating terminating the contract with PSMG, but had the power to do so at any time without cause; (S. Cole);

- James Duckett told the City of Hartford personnel that he did not want the City's money and intended on having Dillon Stadium privately financed; (S. Cole; M. Anderson)

- James Duckett was introduced as someone who could facilitate investments in the City of Hartford, but never gave any personal financial statements of any kind; (S. Cole; E. Davidson, D. Freeman)

- The Invest Technical Services letter presented by Mr. Duckett to City Council in support of the investment he was intending to bring to the City of Hartford was notarized; (S. Cole);

- James Duckett submitted no invoices to the City of Hartford; (S. Cole);

- James Duckett never asked the City for a dime; (S. Cole);

- James Duckett never made any statements or claims to the City of Hartford regarding the progress of the Dillon Stadium project of invoices submitted regarding the project; (S. Cole);

- No money was spent by the City of Hartford or sent to PSMG by the City out of an obligation, request or demand by Mr. Duckett; (S. Cole);

- The only record supporting a defendant going to City Hall to pick up a check was a signature log of the Treasurer's office signed by Mitchell Anderson; (A. Cloud);

- Rick Laxton was introduced to Mitchell Anderson by James Duckett. After that time, Mr. Duckett was no longer involved and Mr. Laxton was dealing with Mr. Anderson; (R. Laxton);

- There was discussion and initial planning being undertaken at Foxwoods Casino involving Mr. Duckett and the concept of a domed athletic facility or arena (R. Laxton; C. O'Connell; D. Freeman);

- When $200,000 was sent from Mitchell Anderson to Deron Freeman, a Connecticut Attorney, it was with explicit instructions by Anderson that this money was Mr. Duckett's to do with as he wishes; (D. Freeman);

- Mr. Laxton expected to be paid, at some point, on the Big Span and Synergy Design invoices that he sent to Mitchell Anderson, with a CC to Mr. Duckett; (R. Laxton);

- David Quisenberry never met or spoke with James Duckett. He had known Mitchell Anderson for years and trusted him and believed in his sincerity; (D. Quisenberry);

- Mitchell Anderson, personally and by direction to Tom Novajasky, repeatedly lied to David Quisenberry about his being paid on outstanding invoices; (D. Quisenberry; M. Anderson; T. Novajasky);

- Mr. Laxton needed to be paid something on invoices he had submitted to continue to engage with PSMG (R. Laxton);

- Mr. Duckett sought to "look the part" to get the substantial financing for investment in the City of Hartford, such as by purchasing a Range Rover; (D. Freeman);

The cumulative weigh of these facts, along with others on the record, and reasonable inferences that can be drawn therefrom, make it impossible for the verdict against Mr. Duckett to stand. Without crediting Mr. Anderson's testimony, the jury was left with a narrative of a group of novice business owners with a dream of professional soccer in Hartford who got way over their heads in trying to bring that dream to fruition.

Without some portions of Mr. Anderson's testimony, there is essentially no way for the Government to establish that Mr. Duckett had any mutual understanding with Mr. Anderson or anyone else to advance or achieve some bad purpose. In addition to Mr. Duckett and Mr. Anderson, each of the other PSMG related individuals (i.e. Mr. Novajasky, Mr. Davidson) all echoed their intentions of bringing quality soccer to Hartford, for the kids of central Connecticut and the pride of the community. No one but Mr. Anderson testified about engaging in any deceitful or criminal conduct against the City, or that the same was ever contemplated.

Moreover, there was also no evidence at trial of a statement made by Mr. Duckett to any person with decision-making authority. The contract with the City had been awarded months before Mr. Duckett was introduced to Mr. Anderson, and could be undone by the City at any time and for any reason. Subcontractors of Mr. Anderson had either never met Mr. Duckett at all (like Mr. Quisenberry) or had limited interaction with him throughout the Dillon project (like Mr. Laxton). Only Mitchell Anderson was contracted with the City. Only Mr. Anderson had the authority and ability to submit invoices to the City. Only Mr. Anderson made assurances to his subcontractors and the City about invoices, payments and work being performed.

It is also worth noting, once again, that throughout trial the only recurrent statement that Mr. Duckett is evidenced to have made within earshot of the City of Hartford officials is that he did not want their money; that he was seeking private funding for the City of Hartford's Dillon Stadium. Clearly, this statement would not suggest a mastermind who was conspiring to steal the more than $10 million remaining in PSMG's contract with the City of Hartford. Further, as was questioned pretrial, if Mr. Duckett made representations to about his football career, his involvement in development projects at Foxwoods resort or elsewhere, even his financial

wherewithal, so what? Without the statements being made to a person capable of relying on them, with a decision to be made, there cannot be a fraud.

Further, without Mr. Anderson's testimony, there was also absolutely no evidence at trial that Mr. Duckett was aware that the money he received from Mr. Anderson had originated from the City of Hartford, as opposed to from private investments in the team (i.e. minority owners), or another source. Even with Mr. Anderson's testimony taken into account, this fact is still unclear at best. It is uncontested that Mr. Duckett did not have access to PSMG accounts at any time and that Mr. Duckett played no role in the invoicing/billing of the City of Hartford. Therefore, it follows that Mr. Duckett would have no way of knowing what moneys or assets were being held by PSMG at a given time, or what PSMG's indebtedness was.

Again, even crediting Mr. Anderson's testimony at trial, the Government has also failed to disprove that Mr. Duckett (and Mr. Anderson for that matter) were acting in good faith, believing that they had secured third-party financing through Moolex. There was absolutely no evidence or testimony to support the assertion that Moolex was a fraud or that that it was unreasonable, at the time, to anticipate a funding commitment from Moolex for Dillon Stadium. Moreover, the Rabbi Levy, an affiliate of Moolex, testified at trial about his own experience with Moolex and understanding that it was (or is) a legitimate funding platform for projects such as Dillon Stadium. A number of purported business transaction documents from Moolex were offered at trial. Moreover, while money was sent to Moolex, purportedly to initiate this financing platform, no moneys were ever sent back to Mr. Duckett, to suggest any kind of kick-back scheme or that Mr. Duckett personally profited from money being sent to Moolex.

In sum, the Government has failed to prove, by credible evidence, a scheme to accomplish any unlawful purposes. Instead, the Government has merely shown what was

already self-evident: that Mr. Anderson, Mr. Duckett and others, although good intentioned, bungled the Dillon Stadium redevelopment project. However, the systematic failures of the City of Hartford, gross mismanagement of the project by PSMG, and perhaps, criminal designs of Mitchell Anderson, are not enough for a jury to have found Mr. Duckett guilty of the charged crimes beyond a reasonable doubt without resorting to guesswork.

WHEREFORE, it is respectfully requested a Judgment of Acquittal be ordered with respect to each count of the Superseding Indictment, pursuant to F. R. Crim. Pro. 29:

**Respectfully submitted,**
Defendant, James C. Duckett, Jr.

By /s/ ct29237

Cody N. Guarnieri, Esq.
Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed. Bar Ct00009
cody@bpslawyers.com

**CERTIFICATION**

This is to certify that on August 21, 2017, a copy of the foregoing Motion was served by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Also sent to the following by U.S. postal mail:

A.U.S.A. Sarah Karwan
Office of U.S. Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

A.U.S.A. Douglas Morabito
Office of U.S. Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

/s/ ct9237

Cody N. Guarnieri, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed. Bar Ct00009