UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 3:16CR124(SRU) |
| ) | |
| JAMES C. DUCKETT, JR. ) | |
| ) | SEPTEMBER 25, 2017 |

**DEFENDANT'S MEMORANDUM IN REPLY**
**RE: MOTION FOR JUDGMENT OF ACQUITTAL**
**AND MOTION FOR A NEW TRIAL**

The Defendant briefly responds to the Government's Memorandum in Opposition of his Motions for a New Trial and Judgment of Acquittal.

**I. The Record Contains Insufficient Evidence of the Defendant's Guilt**

As a preliminary matter, the Government asserts in its Memorandum in Opposition that the Defendant is asking the court to do something which "it cannot" do in evaluating the testimony of Mitchell Anderson, in light of the glaring credibility issues the Defendant points to. However, the Government is in error in that the court may be inclined to intrude upon the purview of the jury in assessing witness credibility under *exceptional* circumstances, such as exist here. See United States v. Bell, 584 I.3d 478, 485 (2d Cir. 2009).

Within that framework, it is apparent that where the Government summarizes the testimony of Novajasky, Laxton, Sinani and others, it does so on narrowly and with regard to discreet points that are not inherently related to the crux of this motion and the

1

insufficiency of the evidence, to wit: whether sufficient evidence supports that Mr. Duckett *intended* to defraud the City of Hartford and/or subcontractors of PSMG.

Moreover, while not responding point for point against the Government's Memorandum in Opposition (pgs. 9-12), one glaring example of this would be at the bottom paragraph of page 10 where the Government writes "Duckett unequivocally, knew that the money he personally received and directed to his friends and associates was city money intended for PSMG". For this tortured interpretation of the evidence the Government cites to its Exhibit 4H, an email by *Mitchell Anderson* with a CC to Duckett, which the evidence at trial demonstrated was knowingly false when made.[1]

Similarly, the Government's assertion regarding what the trial evidence established, without the testimony of Mitchel Anderson, only reinforces how crucial Anderson's compromised testimony was to its case. The Government indicates that "Anderson and Duckett" began directing PSMG funds (p. 10, first bullet). However, this is contradicted by the uncontested evidence of Duckett not having had access to PMSG accounts and is wholly reliant on Anderson's assertions that Duckett was directing his actions. The Government again points to the Laxton invoices, but fails to tie in how Duckett was involved with Mr. Laxton, other than as per Mr. Anderson's testimony. Of course, Mr. Laxton repeatedly testified that he was in contact primarily with Mr.

---

[1] Government's Exhibit 4H is an email wherein Mr. Anderson asserts that $350,000 of city money was sent to Rahul Chaturvedi and Moolex. However, the evidence at trial unequivocally established that Mr. Anderson knew, at the time he sent that email, that $200,000 of those funds were minority team money coming from Hartford City FC account, not the city of Hartford. Of course, the evidence is overwhelming on the fact that Mr. Duckett at no point had access, contact, or oversight of any PSMG financial account.

2

Anderson after their introduction by Duckett. Thus, when the Government states that the jury "could have easily concluded," by circumstantial evidence of the timing of subcontractor (Laxton) and PSMG invoices to the City and the corresponding "diversion of the city funds," that Anderson and Duckett had an illegal understanding to defraud the city of Hartford, that is simply not true without crediting Mr. Anderson's testimony.

The Government also seeks, in its Memorandum, to rehabilitate Mr. Anderson's creditability by suggesting that the testimony regarding whether Mr. Anderson committed perjury at trial is unclear or ambiguous. It was not unclear at trial, nor on the face of the transcript. Beyond that point, the Government fails to address the many, many additional and uncontested lies and omissions that Mr. Anderson acknowledged at trial, including to his friends, co-workers, the City personnel and federal law enforcement officers and prosecutors. Nothing short of a new trial and a mulligan for Mr. Anderson would allow his testimony to be perceived with even a modicum of trustworthiness.

In sum, the Government Memorandum in Opposition only further reinforces the unproven aspects of this case, such as the scienter element, that cannot be proven without a blind reliance on the testimony of Mitchell Anderson.

## II. A New Trial is Warranted

The Government mischaracterizes Mr. Duckett's' assertions regarding his past connection with the NFL as being misstatements to the victim of a fraud. Government footnote 5 on pages 17-18 of its Memorandum indicates just how pervasively the Government presented this evidence of Mr. Duckett's asserted connection with the NFL when it was NOT directed at the City of Hartford, Quisenberry (who never met Duckett) or Fuss and O'Neill. The only

3

reference to this information going to the City is a presentation sent to the City of Hartford by PSMG, which was not sent at the direction of Mr. Duckett.

The Government also failed to address in the course of trial how this evidence relates to Mr. Duckett's financial wherewithal, which was the Government's justification for admission in response to pretrial motions. Having failed to make that connection and having failed to show this information was relevant to or relied on by the City of Hartford, it is apparent that the Government used this evidence repeatedly for the limited purpose to suggest that Mr. Duckett was untrustworthy in violation of Rule 404(b), and raises a substantial concern that the jury's verdict is based on this impermissible character evidence in a significant degree.

Moreover, while the Government now argues for the first time that this evidence was offered to show Mr. Duckett "acted knowingly and with specific intent to defraud" this also rings hollow.

Finally, in relation to the Governments memorandum regarding the jury instruction infirmity also reinforces the Defendant's point. The Defendant does not contest the validity of a "right to control theory" of property in a wire/mail fraud case. Moreover, the Defendant does not contest that the government needs to prove the defendant contemplated some actual harm to the victim. The problem is when the jury instruction provides the jury the opportunity to conflate these elements.

The "right to control" theory implicates a property interest as the object of the fraud. The Government did not indict Mr. Duckett on a right to control theory, but on the more general theory of defrauding the victim of money through misrepresentation. The withholding of information to the City is the alleged fraudulent misrepresentation and, perhaps, circumstantial

4

evidence of contemplated harm. However, the information that was withheld or concealed is not itself the property interest at stake in this case, per the indictment.

Thus, the true concern becomes that the jury instructions allowed the jury to interpret the mail and wire fraud elements much like the Government asserts in its Memorandum, where the withholding of information becomes the fraud itself, including the mens rea element and property interest in one. Thus, the instructions as worded impermissibly allowed the Government to prove a fraud materially different in nature than the one actually charged in the indictment. Moreover, the instructions impermissibly expanded the "right to control theory" by allowing the withheld information, without the Defendant having some duty to disclose the same, to become property interest that is the subject of the mail and wire fraud.

## CONCLUSION

For reasons set forth herein, the Defendant respectfully requests a judgment of acquittal enter in this case or, alternatively, on order for a New Trial enter in favor of the defendant.

**Respectfully submitted,**
Defendant, James C. Duckett, Jr.


By____/s/ 29237_____
Cody N. Guarnieri, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed. Bar Ct29237
cody@bpslawyers.com

## **CERTIFICATION**

This is to certify that on September 25, 2017, a copy of the foregoing Motion was served by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Also sent to the following by U.S. postal mail:

A.U.S.A. Sarah Karwan
Office of U.S. Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

A.U.S.A. Douglas Morabito
Office of U.S. Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

/s/ 29237
Cody N. Guarnieri, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar  Ct29237