# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:16CR124(SRU) |
| V. | : | |
| JAMES C. DUCKETT, JR., et al | : | NOVEMBER 9, 2017 |

## DEFENDANT, JAMES C. DUCKETT, JR.
## SENTENCING MEMORANDUM

James C. Duckett, Jr. after a jury trial was convicted of 12 of a 13 count indictment including counts involving Conspiring to Commit Mail Fraud, as well as engaging in illegal Monetary Transactions. Mr. Duckett has been free on a $100,000 non-surety bond since his convictions. Sentencing is scheduled for November 17th.

Mr. Duckett was born in 1972 (45) and lived in Maryland until he graduated from high school. He lived with his parents and with some of his siblings. Because of certain mental health issues his father suffered from, Mr. Duckett turned to sports as a way of growing and using his coaches as father figures. Mr. Duckett also worked odd jobs while in school to help support himself and his family; the places worked included fast food restaurants, a gas station as well as farm work. Mr. Duckett always considered

1

himself to be a hard worker. Mr. Duckett enjoyed playing football, baseball and basketball.

Mr. Duckett's mom contracted cancer and passed away in 2001. Mr. Duckett over the years lived in various areas of the East Coast, but since 2008 he has lived in Connecticut. During this time period he stayed in the sports business to the extent that he would assist athletes, who were interested not only in a college career, but also were interested in moving on to the pros. Over the years Mr. Duckett has been in and out of relationships. He has three children. His oldest daughter is 16 and lives with her mother in Florida; he visits with her whenever the opportunity presents itself. He has a positive relationship with her. She is an excellent student and plays sports. He has an eight year old son who lives in Rhode Island with his mother. His son would at times live with him during the summer months. He has a positive relationship with him, although it's been difficult due to circumstances surround his 2016 arrest. Finally, it is to be noted that he has a three year old daughter with Jackie Martell, 32, who he has been living with; she is employed as an office manager. Mr. Duckett has provided counsel with copies of photographs of his children, whom he obviously loves. On numerous occasions he has expressed the sadness he will feel being separated from them while incarcerated.

BROWN PAINDIRIS & SCOTT, LLP   ATTORNEYS AT LAW
100 PEARL STREET   HARTFORD, CONNECTICUT 06103   (860) 522-3343   JURIS NO. 20767

From an employment point of view, Mr. Duckett feels he has skills in the area of player development. He informs counsel that he enjoys helping young athletes to attain success by using their respective talents to grow as a person and in some cases obtain a professional career in sports. Mr. Duckett, like most people, has spent his life looking for business projects that result in a successful economic and personal status. Indeed it was this desire that caused him to accept co-defendant's Mitchell Anderson's invitation to get involved in the revitalization project at Dillon Stadium.

Prior to the events, subject matter of the Indictment, Mr. Duckett never knew Mr. Anderson or his staff. They had sought him out as a person who could help redevelop the stadium and putting a professional soccer team in Hartford. Mr. Duckett was truly excited about the opportunity. It was a dream of his to be running a professional sports team such as soccer. Mr. Duckett over time by February 2015 had contacts that purportedly had access to a lot of money to invest in viable projects; Mr. Duckett truly believed this and had put much effort to cultivating these individuals, including a company called "Moolex", as well as one in Florida owned and operated by one Derek Edwards.

It is important to note that Mr. Anderson already had a deal with certain City of Hartford officials to obtain 12 million dollars in grants to redevelop Dillon Stadium. It

BROWN PAINDIRIS & SCOTT, LLP   ATTORNEYS AT LAW
100 PEARL STREET   HARTFORD, CONNECTICUT 06103   (860) 522-3343   JURIS NO. 20767

came out during the trial that within <u>one day</u>, Mr. Anderson's bid in late spring 2014, was accepted by the City, even though Mr. Anderson had no financial ability to run the project, which had to advance him thousands upon thousands of dollars to start the project. Mr. Anderson had no idea who would procure a professional soccer team to play at the redeveloped Dillon Stadium. Apparently, Mr. Anderson quickly (and long before Mr. Duckett was involved) obtained and spent $175,000 in advance money in September of 2014. (While the government may be counting this money as part of the City's losses, clearly this money was given out by the City six months earlier and spent by Mr. Anderson without any input by Mr. Duckett.) This occurred about the same time Mr. Anderson apparently was submitting bogus insurance papers to the City to cover losses in case Anderson's default. The false insurance papers submitted by Anderson has very recently resulted in a $350,000.00 pay out to the City by Bruen, Deldin, DiDio Associates to help cover their losses in this matter. This payment cut the losses to the City and should be factored in to any restitution order of Mr. Duckett who, unlike Mr. Anderson, should not be held responsible for this $175,000 payout. Additionally, while on the subject, Mr. Duckett should not be responsible for the $20,000 payout Mr. Anderson decided on his own to pay to <u>Anthony Carrilleri</u> for purportedly finding Mr.

4

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

Duckett. This was money obviously obtained by Mr. Anderson before Mr. Duckett's involvement.

Mr. Duckett believed that the Dillon Stadium project could be a success and believed that through Moolex he could raise the money needed to <u>privately</u> fund the project. It is undisputed that in spring of 2015, when Mr. Duckett met City Officials to discuss the project, he told them "Keep your money". He was going to privately finance the project and this was why representatives from Moolex were at City Hall in the spring of 2015 and reviewed various plans. Mr. Duckett believed that Rick Laxton of Big Span was an honest person that had the skills to work with Quisenberry Architects to design a roof to the complex; all to the benefit of the project. Indeed, the testimony was that after Mr. Duckett introduced Mr. Laxton, Mr. Duckett had little to do with the day-to-day interaction between the two entities. On the stand Mr. Laxton admitted that he submitted the estimates as billing for work rendered; he never suggested that Mr. Duckett was aware of this questionable conduct.

Mr. Duckett trusted Mr. Anderson and Mr. Thomas Novajasky, both of PSMG. He fatally assumed that they were honest in the use of monies obtained from the City and poured into PSMG's general and construction bank accounts. Unlike both of these people, Mr. Duckett had <u>no</u> access to these two accounts. He had no way of knowing

5

what personal or business funds of PSMG or Mr. Anderson/Novajasky were also put in these accounts. The evidence (or lack of evidence) clearly demonstrated that, unknown to Mr. Duckett, Mr. Anderson was funneling thousands of dollars into another personal bank account to pay his mistress or her son thousands of dollars or was using the money to pay off other unrelated debts for his own self-serving reasons. Mr. Duckett had no way of knowing that Mr. Novajasky, who knew the source of the money only came from the City, and who knew that Mr. Anderson was not paying the subcontractors with money given to PSMG to do so, raided the two accounts (and admitted the same at trial) for his own self-enrichment at the total expense of the subcontractors. Like Mr. Anderson, he was in a position of trust as an officer (V.P. of PSMG), and while not indicted for reasons best known to the Justice Department, enjoyed the fruits of this conduct as well as accepting thousands upon thousands of dollars in checks written to him by Anderson, also knowing the only source of these funds were payments by the City to be held in escrow for payment to Quisenberry and Fuss and O'Neill. While Anderson, of course, should be held responsible for these illicit payments, Mr. Duckett should not. Not only did he not receive these funds, not only was he not in a position of trust with the City, as Anderson and Novajasky were, there was zero evidence presented

6

that he knew of these payments. He certainly did not agree to these secret transactions between Anderson and Novajasky.

There is no question but that Mr. Duckett received funds from Mr. Anderson and spent said funds on personal items. However, he also believed that these funds were from minority investors, each of who were to ante up $200,000, including Mr. Anderson, who put that exact amount on March 30, 2015 in Mr. Duckett's personal attorney's account. While Mr. Anderson claimed on the stand that he was only (for reasons unknown) parking it there for 30 days, he later admitted on cross examination that he never attempted to seek return of said funds, the reason being is that he knew the funds were payment to Mr. Duckett for his services to put together a professional soccer team.

On the issue of Mr. Duckett's belief at the time in question in 2015, as to whether <u>he</u> believed that Moolex was legitimate, the answer can be found in the simple common sense test, did he put money into it. The answer is yes. He received no kickback (the federal agent testified he could find no such kickback.) Hence, the <u>only</u> reason, no matter how naïve, was that in exchange for advancing a little money he would be loaned a lot of money. Same logic with Derek Edwards. Mr. Duckett sent money in late summer of 2015 to Mr. Edwards, again under the naïve belief that Mr. Edwards would

BROWN PAINDIRIS & SCOTT, LLP   ATTORNEYS AT LAW
100 PEARL STREET   HARTFORD, CONNECTICUT 06103   (860) 522-3343   JURIS NO. 20767

come through. It was Mr. Duckett who insisted that Mr. Edwards get the infamous statement presented to the City Counsel in October <u>notarized</u> by Mr. Edwards; this is why he boasted yet again that he did <u>not</u> want City money. Crooks do not normally tell their intended targets <u>not</u> to give them money.

On the issue of losses and restitution, the PSR reports losses in the amount of $1,354,682. This figure as it relates to both responsibility and restitution orders is challenged. First any monies including the $175,000 advance payment to Anderson and PSMG occurred long before Mr. Duckett was involved. Obviously, there would not at that time been a conspiracy in existence. Mr. Duckett should not be ordered to pay restitution on that amount. Next <u>any</u> billing involving work done by Quisenberry and Fuss and O'Neill before the onset of the alleged conspiracy, which at the earliest would have been either late February 2015 or March 2015, could not have been part of the conspiracy and should be excluded. It should be noted that had PSMG/Anderson <u>not</u> submitted a bogus insurance policy to cover losses, the City would not suffered as it did; in any even the City has recovered $350,000 in restitution from litigation and Mr. Duckett should not be responsible for said sum.

On the issue of victim impact, an undated letter from David Quisenberry talks about losses suffered and wants this Court to apparently believe that Mr. Duckett is at

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

fault for all the losses and Mr. Anderson was a victim. "Mr. Duckett took advantage of Mitch Anderson ...." Counsel asks the Court to note that Mr. Quisenberry is far from an unbiased individual. In fact, not only has he been friends with Mr. Anderson for a long time, but was part of the project proposal, according to testimony at trial. However, maybe because he was not in the courtroom, he may have missed Mr. Anderson's testimony that Mr. Duckett did not force him to do anything; that he admitted to instructing Mr. Novajasky to lie to Mr. Quisenberry about why he wasn't being paid; that Mr. Anderson reluctantly admitted to taking money due to QA & M and spent it on his girlfriend; that he spent thousands of dollars on his personal bills; that he gave thousands of dollars due Quisenberry as late as August 2015 to Novajasky. (Novajasky was well aware of this).

Additionally, it was Mr. Anderson, not Mr. Duckett was in a position of trust with QA & M and took advantage of his friendship to defer payments to Mr. Quisenberry; in fact at trial Mr. Anderson, who used <u>his</u>, not Mr. Duckett's bank accounts, to hide the money, said that yes he misused the money but in long term intended to pay off the balance. It is obvious from Mr. Quisenberry's letter that even at this late date, Mr. Anderson has been far from candid with his friend.

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

Having said this, Mr. Duckett, who according to a 302 report of an interview with Mr. Novajasky seemed surprised as late as June, 2015 when told Mr. Quisenberry was not being <u>fully</u> paid, acknowledges that the failure to receive full payment for work performed by Mr. Quisenberry's business would have an obvious negative impact. He certainly regrets this outcome to Mr. Quisenberry.

Concerning the City of Hartford's Victim Impact Statement authored by an attorney for the City, it is not disputed that the City suffered a loss to its contract that it had made with PSMG and Mitch Anderson. It had no contract with Mr. Duckett at any time. The City was not in a position of trust with Mr. Duckett as it was with Mr. Anderson. In fact, there never was a contract of any sort with Mr. Duckett. The spin the City puts on the incident is to suggest that all the events essentially were all Mr. Duckett's fault, "Mr. Duckett knowingly and deliberately schemed to unlawfully obtain funds from the City". Yet, the City ignores the fact that <u>its</u> employees were charged with monitoring the September, 2014, contract made with PSMG and Mr. Anderson.

It is to be noted that it was Mr. Anderson who created and submitted all the bills on behalf of PSMG. It was PSMG and Mr. Anderson that received every payment from the City. It was Mr. Anderson or Mr. Novajasky that decided how to spend the money. It was Mr. Anderson who fraudulently represented to the City what PSMG was doing

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

with the money, yet the City is stating that it was Mr. Duckett, not Mr. Anderson, whose "... duplicity tarnished the trust ...." of the City. In fact it was the trust the City had with Mr. Anderson, whom they awarded the 12 million dollar contract <u>one day</u> after Mr. Anderson submitted the proposal, that was breached.

The facts are that while Mr. Duckett is going to be held responsible for his role in this matter, for counsel for the City to attempt to cover up the key roles Mr. Anderson and Mr. Novajasky played in obtaining the contract, implementing the contract, monitoring payments for the City, exclusively handling the funds from the City and distributing said funds as they saw fit, distorts the facts and unfairly minimizes the role of PSMG's officers in this matter.

None of the above is intended to minimize Mr. Duckett's activities in the project, as heard at trial. However, for the City to attempt to hide its failure to in any way monitor Ms. Anderson and PSMG, as the contract required, and then blame Mr. Duckett for everything, even contrary to Mr. Anderson's own testimony, is simply not justified.

Even the government in its Indictment by failing to charge Mr. Duckett, cannot claim that Mr. Duckett should be held accountable for certain losses:

1) 4/6/2015 - PSMG check #1035 to Anthony Carrilleri - $20,000.

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

2) 8/5/15 - PSMG check #1042 to Anderson's personal account Premier Soccer - $16,770.

3) 8/11/15 - PSMG - construction account - Major <u>Arena</u> Soccer League - $58,000.

4) 8/13/15 - PSMG check #1153 paid to "Cash" for Anderson - $20,000.

5) 10/1/15 - PSMG check #1005 to Home Green Advantage - $36,800.

6) 10/5/2015 - PSMG check #3063 to Derek Edwards - $12,000.

7) Total: <u>$163,570</u>

Mr. Duckett request that counsel make it clear to the court that he deeply regrets getting involved in this matter; he realizes that he failed to be more diligent in his actions in dealing with Mr. Anderson. He realizes now that his faith in Moolex as well as with Derek Edwards was misplaced. He had a strong belief that Moolex was legitimate and would come through with a significant loan to actually save the City the 12 million it was willing to spend on the project. It was not his intent that the City lose any money on the project. It was not his objective that the project, itself, fail.

Finally, it is respectfully submitted that the fact that the defendant chose to exercise his absolute fundamental right to a jury trial should not result in a more severe penalty than already found in the Guidelines. Because Mr. Duckett chose to go to trial

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

he has lost the standard 3 point deduction awarded under the Guidelines. Under the presentence report the calculation call for an offense level of 24 (51-63 months). Had he entered pleas his Guideline level would have been level 21 (37-46) months, a difference of 14 plus months, more than enough of a penalty.

Also, for reasons found in a supplementary brief to be filed under seal, it is submitted that a sentence below the aforementioned Guideline would be appropriate.

DEFENDANT, JAMES C. DUCKETT, JR.

By _____
Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009
rbrown@bpslawyers.com

13

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

## CERTIFICATION

This is to certify that on November 9, 2017, a copy of the foregoing was served by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Also sent to the following by U.S. postal mail:

A.U.S.A. Sara P. Karwan
Office of U.S. Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

A.U.S.A. Douglas Morabito
Office of U.S. Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed. Bar Ct00009

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW

100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767